EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Doris Lebrón Correa, etc.<br><br>Demandantes-Peticionarios<br><br>vs.<br><br>Juan R. Díaz Troche, etc.<br><br>Demandados-Recurridos | Certiorari<br><br>2005 TSPR 129<br><br>165 DPR \_\_\_\_ |

Número del Caso: CC-2003-587

Fecha: 14 de septiembre de 2005

Tribunal de Circuito de Apelaciones:

　　　　　　　Circuito Regional IV Aguadilla-Mayagüez
　　　　　　　Panel I

Juez Ponente:

　　　　　　　Hon. Ivonne Feliciano Acevedo

Abogado de la Parte Recurrida:

　　　　　　　Lcdo. José L. González Castañer
　　　　　　　Lcda. Rita M. Vélez González
　　　　　　　Lcdo. Anselmo Irizarry Irizarry

Abogado de la Parte Peticionaria:

　　　　　　　Lcdo. Francisco Vincenty Gronau

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Doris Lebrón Correa, etc.

   Demandantes-Peticionarios

       vs.                    CC-2003-587     Certiorari

Juan R. Díaz Troche, etc.

   Demandados-Recurridos

SENTENCIA

San Juan, Puerto Rico, a 14 de septiembre de 2005.

I.

El 11 de julio de 1997 Doris Lebrón Correa (en adelante Lebrón Correa) fue ingresada en el Hospital Perea para ser intervenida quirúrgicamente por el doctor Juan Díaz Troche con el propósito de extirparle la matriz y la vesícula mediante un procedimiento de laparoscopía. A los tres días de haber sido dada de alta comenzó a sentir fuertes dolores abdominales y se percató de que su piel y ojos se habían tornado color amarillo.

Seis días después de la primera operación, Lebrón Correa acudió a la oficina del doctor Díaz Troche quien después de examinarla le diagnosticó una peritonitis biliar y procedió a hacerle una

punción abdominal para extraer líquido biliar. El doctor Díaz Troche determinó que se trataba de una situación de emergencia y ordenó el ingreso nuevamente de Lebrón Correa al Hospital Perea para efectuar una laparotomía, la cual se llevó a cabo el 18 de julio de 1997. Durante esta segunda operación, al realizar la exploración abdominal, se encontró que Lebrón Correa había sufrido una peritonitis biliar secundaria a consecuencia de una laceración del ducto biliar ocurrida en la primera operación.

Luego de esta segunda operación Lebrón Correa continuó hospitalizada y teniendo complicaciones derivadas de las primeras dos operaciones. Aunque el doctor Díaz Troche ordenó una consulta con un gastroenterólogo la noche del 21 de julio de 1997, debido a que la paciente estaba sangrando, la enfermera de turno le informó incorrectamente al gastroenterólogo que se trataba de una situación de diarreas. Ello motivó que el galeno no atendiera a Lebrón Correa con premura, posponiendo su examen para el día siguiente. Sin embargo, éste no pudo realizarse debido a que la condición de Lebrón Correa se tornó crítica el 22 de julio de 1997 cuando tuvo que ser operada de emergencia por tercera ocasión debido a una hemorragia gástrica masiva que culminó en un procedimiento de vagotomía, que requirió que se extirpara la mitad del estómago. Luego de esta tercera operación Lebrón Correa fue dada de alta el 28 de julio de 1997.

El 10 de julio de 1998, Lebrón Correa, por sí y en representación de sus hijos menores presentaron una demanda

de daños y perjuicios por impericia médica en contra del doctor Díaz Troche, su esposa, la sociedad legal de gananciales integrada por ambos, el Hospital Dr. Perea, Inc., el Sindicato de Aseguradores para la Suscripción Conjunta de Seguro de Responsabilidad Médico-Hospitalaria (SIMED) y Saint Paul Fire & Marine Insurance Company. Se alegó que la operación por el doctor Díaz Troche fue realizada de manera negligente, desviándose de las normas y prácticas de una buena práctica médica, y que como consecuencia de ello, Lebrón Correa padeció de una condición de ictericia. Se alegó, además, que la condición de ictericia provocó el ingreso de la demandante, nuevamente, en el Hospital Dr. Perea, donde se le practicaron una segunda y una tercera operación.

Finalmente, se alegó que a causa de la negligencia del doctor Díaz Troche y del Hospital Dr. Perea, Lebrón Correa sufre de una incapacidad permanente, la cual le impide llevar una vida normal. Debido a lo anterior, la demandante reclamó sufrimientos y angustias mentales, cuyo valor estimó en una suma no menor de un millón de dólares ($1,000,000).

Después de un extenso procedimiento de descubrimiento de prueba, el Tribunal de Primera Instancia celebró una vista en su fondo el 5 de marzo de 2001. En ésta se recibió el testimonio de los hijos de la demandante y de su perito el doctor Luis Soltero Harrington. El foro de instancia también tuvo ante sí los expedientes médico-hospitalarios

de la peticionaria, una transcripción de las notas de progreso y los reportes post-operatorios del doctor Díaz Troche, las pólizas de seguro de los demandados, el *currículum vitae* del doctor Soltero Harrington y el informe pericial de dicho galeno. Luego de terminar el desfile de prueba la demandante-peticionaria dio por sometido su caso el día 6 de marzo de 2001.

Así las cosas, el Hospital Dr. Perea, Inc. y su compañía aseguradora presentaron una moción de desestimación al amparo de la Regla 39.2(c) de las de Procedimiento Civil, alegando que no se había presentado prueba para establecer un daño real ni una relación causal. A dicha moción se unieron posteriormente el doctor Díaz Troche y SIMED. La demandante se opuso a la solicitud. El tribunal de instancia a pesar de que afirmó no tener duda alguna de la negligencia del doctor Díaz Troche, solicitó a las partes que presentaran sus posiciones por escrito, en particular con respecto a la suficiencia de la prueba de daños.

Evaluada la prueba ante sí y los planteamientos de ambas partes, el Tribunal de Primera Instancia dictó una sentencia el 6 de septiembre de 2002, acogiendo los argumentos de los demandados y desestimando la demanda. Dicho foro determinó que, a pesar de que el doctor Díaz Troche había sido negligente al lacerar el ducto biliar durante la primera intervención quirúrgica y que esa laceración fue la que propició que la demandante tuviera

que ser operada nuevamente, el doctor Troche no había sido negligente al realizar las subsiguientes dos intervenciones y que la peticionaria no había probado los daños sufridos.

Inconforme, la demandante apeló el 28 de octubre de 2002 al Tribunal de Apelaciones. Mediante una sentencia dictada el 26 de junio de 2003, dicho foro confirmó el dictamen impugnado. Resolvió que la evaluación de la prueba realizada por el foro de instancia representaba el análisis más racional y justiciero de la totalidad de la evidencia.

El día 23 de julio de 2003 la peticionaria acudió ante nos señalando la comisión de los siguientes errores:

"Primer Error

COMETIÓ ERROR EL HONORABLE TRIBUNAL DE APELACIONES AL CONFIRMAR LA SENTENCIA DESESTIMATORIA DICTADA POR EL TRIBUNAL DE PRIMERA INSTANCIA, A PESAR DE QUE LOS PROPIOS DEMANDADOS-RECURRIDOS EXPRESARON SU CONFORMIDAD A LA REVOCACIÓN DE LA SENTENCIA Y A LA CONTINUACIÓN DEL JUICIO EN SU FONDO Y A PESAR DE QUE, CONFORME A LA EVIDENCIA, ESA ERA LA ÚNICA SOLUCIÓN VÁLIDA Y JUSTA EN DERECHO.

Segundo Error

COMETIÓ GRAVE Y CRASO ERROR EL HONORABLE TRIBUNAL DE APELACIONES AL RESOLVER QUE LOS DEMANDANTES-PETICIONARIOS NO PRESENTARON PRUEBA SOBRE LA EXISTENCIA DE DAÑOS NI DE LA RELACIÓN CAUSAL DE DICHOS DAÑOS CON LA NEGLIGENCIA ESTABLECIDA."

El 7 de octubre de 2003 denegamos el recurso solicitado por la parte peticionaria; los Jueces Asociados señores Fuster Berlingeri y Rivera Pérez expedirían; el Juez Presidente Interino señor Rebollo López no intervino.

El 7 de noviembre de 2003 denegamos la primera moción de reconsideración de la parte peticionaria; los Jueces Asociados señores Fuster Berlingeri y Rivera Pérez reconsiderarían; el Juez Presidente Interino señor Rebollo López no intervino.

Sin embargo, el 12 de diciembre de 2003, acogimos la segunda moción de reconsideración de la peticionaria Doris Lebrón Correa y expedimos el recurso incoado; el Juez Presidente Interino señor Rebollo López no intervino.

El 15 de marzo de 2004 la parte demandante-peticionaria presentó su alegato, y el 15 de abril de 2004 el Hospital Dr. Perea y su aseguradora presentaron el suyo. El 22 de abril de 2004 el doctor Díaz Troche compareció y el 20 de mayo SIMED presentó su alegato. Con el beneficio de la comparecencia de las partes, resolvemos.

II.

En Puerto Rico, la responsabilidad civil por actos de mala práctica de la medicina, debidos a la impericia o negligencia de un facultativo, surge del Art. 1802 de nuestro Código Civil, 31 L.P.R.A. sec. 5154. Para que proceda la responsabilidad civil del médico, el promovente de la acción tiene la obligación de establecer: 1) la ocurrencia de un acto médico culposo o negligente; 2) la producción de un daño real; y 3) la relación causal entre el acto médico negligente y el daño sufrido. Para establecer lo anterior, es necesario que se presente prueba

satisfactoria sobre: 1) las normas mínimas de conocimiento y cuidado médico aplicables a los generalistas o especialistas; y 2) la relación causal entre la actuación u omisión del médico y la lesión sufrida por el paciente. López y otros v. Dr. Cañizares, res. el 5 de octubre de 2004, 163 D.P.R. ___, 2004 TSPR 160, 2004 JTS 165; Soto Cabral v. E.L.A., 138 D.P.R. 298, 308-309 (1995); Pagán Rivera v. Mun. de Vega Alta, 127 D.P.R. 538, 544 (1990). De igual manera, una entidad dedicada al servicio de la salud responde por la negligencia o impericia de sus empleados bajo el Art. 1803 del Código Civil, 31 L.P.R.A. 5142. Soto Cabral v. E.L.A., supra. Dicho estatuto recoge el principio de responsabilidad vicaria por virtud del cual una institución hospitalaria podría ser responsabilizada extracontractual- mente por los actos negligentes cometidos por alguno de sus empleados. López y otros v. Dr. Cañizares, supra.

Por otra parte, el concepto jurídico de "daño" abarca la amplia diversidad de matices que dicho concepto tiene. Incluye todo aquel menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, en su propiedad o en su patrimonio, debido a la contravención de una norma jurídica. García Pagán v. Shiley Caribbean, Etc., 122 D.P.R. 193 (1988). Es claro que, para que ocurra un daño real indemnizable bajo el Art. 1802, supra, tienen que concurrir tres elementos esenciales. Dos de ellos, que estén relacionados propiamente con el daño en sí, son:

(1) que el daño ha de causar una lesión, pérdida o menoscabo, y (2) que éste ha de recaer sobre bienes o intereses jurídicos de una persona. El tercero es que el daño ha de ser resarcible de alguna forma. J. Santos Briz, *La responsabilidad civil*, 6ta ed., Madrid, Ed. Montecorvo, 1991. Soto Cabral v. E.L.A, *supra*.

Ahora bien, la mera existencia de una acción u omisión negligente no le confiere a la demandante una causa de acción para pedir resarcimiento. La acción instada al amparo de la responsabilidad civil médica, como cualquier otra que se inicie al amparo del Art. 1802 del Código Civil, *supra*, tiene un carácter estrictamente resarcitorio y existe sólo si el acto negligente del demandado ocasionó un daño real. La reparación del daño sufrido existe sólo como medida del daño sufrido y no del grado de descuido o negligencia del demandado, Soto Cabral v. E.L.A., *supra*.

Por último, es norma reiterada en nuestra jurisdicción que la doctrina que nos rige respecto al nexo o relación causal es la doctrina de la causalidad adecuada, según la cual "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general". Valle Izquierdo v. E.L.A., res. el 14 de mayo de 2002, 157 D.P.R. ___, 2002 TSPR 64, 2002 JTS 70; Sucns. Vega Marrero v. A.E.E., 149 D.P.R. 159, 170 (1999); Soc. de Gananciales v. Jerónimo Corp., 103 D.P.R. 127, 134 (1974). En casos de impericia médica el promovente de la acción deberá establecer

mediante preponderancia de prueba, que el tratamiento médico suministrado o la ausencia de uno indicado y correcto fue el factor que con mayor probabilidad causó el daño sufrido por el paciente. Santiago Otero v. Méndez, 135 D.P.R. 540, 549 (1994); Hernández Rivera v. Municipio de Bayamón, 135 D.P.R. 901, 909 (1994).

III.

A la luz de la normativa esbozada, pasamos a examinar el caso de autos.

De un análisis de la exposición narrativa de la vista y la prueba presentada, surge con meridiana claridad que el doctor Díaz Troche realizó una operación de forma negligente. Tan es así, que en la sentencia emitida por el Tribunal de Primera Instancia, confirmada por el foro apelativo, se resolvió expresamente que no había duda de la negligencia del doctor al realizar la operación. Según surge de los expedientes médico-hospitalarios y el testimonio del perito de la parte demandante, el cual no fue controvertido, la laceración al tubo biliar durante la operación de remoción de vesícula mediante la técnica de Laparoscopía fue producto de la negligencia del doctor Díaz Troche. **Como consecuencia de dicha laceración, la demandante tuvo que ser operada de emergencia en dos ocasiones, teniendo que ser hospitalizada por 14 días en total, durante los cuales sufrió dolores Intensos, angustias y se le tuvo que extirpar la mitad del estómago**.

En su sentencia el Tribunal de Primera Instancia, además de aceptar que hubo impericia médica, cuestionó si dicha negligencia había causado algún daño. Hizo referencia a los testimonios de los hijos de la demandada, que expresaron haber sufrido al ver a su madre convalecer. También mencionó que el perito, en el contrainterrogatorio, había indicado que no encontró evidencia de que la demandante sufriera de alguna condición de incapacidad permanente a causa de las operaciones. Por último, el Tribunal de Primera Instancia determinó que los sufrimientos y angustias mentales de los hijos fueron pasajeros, por lo cual no conllevaban la indemnización solicitada. Por consiguiente resolvió que no se había probado la relación causal ni la ocurrencia de daños.

En el pasado hemos compensado por los daños y sufrimientos físicos y mentales causados por operaciones y procedimientos médicos que, a su vez, han sido provocados por una primera operación negligente. Torres Ortiz v. Plá, 123 D.P.R. 637 (1989). Aunque es doctrina firmemente establecida que en ausencia de pasión, prejuicio y parcialidad los foros apelativos deben darle deferencia a las determinaciones de hechos de los tribunales de instancia, Meléndez v. Caribbean Int'l. News, 151 D.P.R. 649 (2000), en este caso, sin embargo, de un análisis ponderado, racional y justiciero de la prueba desfilada en la vista, estamos convencidos que la demandante sí sufrió

un daño real y que éste tiene una relación causal con la negligencia del demandado.

Según el perito de la demandante, el cual no fue controvertido por la parte demandada, el tipo de lesión que sufrió la demandante a causa de la negligencia del recurrido llevó a que la demandante sufriera de dolores intensos y complicaciones, que culminaron en su reingreso al hospital para una segunda operación exploratoria de emergencia. Además, de dicha operación, se tuvo que intervenir en una tercera ocasión para <u>removerle la mitad del estómago y así salvar su vida debido a las complicaciones generadas por la negligencia en la primera operación</u>. Con estos hechos probados se cumple con los requisitos de un daño real y la relación causal entre el daño y la negligencia.

No es necesario hacer un gran esfuerzo para concluir que sufrir dos operaciones de emergencia durante varias horas y con varias semanas de convalecencia conlleva daños, dolores y angustias mentales que no son una "pena pasajera" de las que nos referimos en <u>Moa v. ELA</u>, 100 D.P.R. 573 (1972). ¿Qué más prueba de daños y angustias mentales que verse obligado a someterse a una segunda y tercera operación de emergencia para salvarle la vida por la negligencia en la primera? Siguiendo la jurisprudencia en casos de impericia médica y según la prueba desfilada en la vista, es una conclusión lógica que la demandante sufrió un daño real y que dicho daño fue causado por la negligencia

del demandado. Debido a esto y a nuestra jurisprudencia interpretativa, también responde solidariamente el Hospital Dr. Perea y las aseguradoras por la negligencia causada por sus empleados en el cuido brindado a la demandante, al no transmitir las órdenes médicas dadas por el doctor Díaz Troche a tiempo. López y otros v. Dr. Cañizares, *supra*, Núñez v. Cintrón, 115 D.P.R. 598 (1998).

IV.

Por los fundamentos aquí expuestos, se revoca la sentencia recurrida y se otorga a la demandante Doris Lebrón Correa la compensación de veinte mil dólares ($20,000) en daños por las angustias físicas y mentales causadas por la negligencia de los demandados.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emitió Opinión Disidente. El Juez Presidente señor Hernández Denton disiente sin opinión escrita. El Juez Asociado señor Rivera Pérez no interviene.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Doris Lebrón Correa, *et al.*

    Demandantes–Peticionarios

        vs.               CC–2003–587      CERTIORARI

Juan R. Díaz Troche, *et al.*

    Demandados–Recurridos

OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 14 de septiembre de 2005

Disentimos; permanecer callados ante la errónea y absurda Sentencia que se emite en el presente caso nos resulta imposible. La decisión emitida por la Mayoría tiene una extraordinaria particularidad que la hace única y distinta: la misma violenta los derechos tanto de la parte demandante como de la parte demanda. Veamos.

I

Tal y como surge de la Sentencia que hoy emite la Mayoría, en el presente caso la Sra. Doris Lebrón Correa, por sí y en representación de sus cinco hijos, presentó una demanda de daños y perjuicios por impericia médica en contra del

Dr. Juan Díaz Troche y otros.[1] En la misma se alegó que el 11 de julio de 1997 Lebrón Correa fue ingresada en el Hospital Dr. Perea, Inc., en donde fue intervenida quirúrgicamente por el doctor Díaz Troche, quien le extirpó la vesícula mediante el procedimiento de laparoscopía.

Adujo que esta intervención fue realizada "de manera negligente, torpe y desviándose de las normas y prácticas aceptadas y requeridas en una buena práctica de la medicina" y que la negligencia del doctor Díaz Troche, en esta primera intervención, provocó que tuviera que ser operada de emergencia, en dos ocasiones adicionales, lo cual desembocó en la extirpación de parte de su estómago. Alegó, por último, que en la actualidad sufre una incapacidad permanente, situación por la que ha padecido angustias y sufrimientos; estimó todos estos daños en una suma no menor de un millón de dólares ($1,000,000).

Tras la celebración de una vista en su fondo --en la que la parte demandante presentó toda su prueba y dio por sometido su caso-- los demandados presentaron una moción de desestimación al amparo de la Regla 39.2(c) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 39.2 (c). En síntesis, alegaron que en la prueba presentada por los

---

[1] Se demandó, además, a su esposa y la sociedad legal de gananciales integrada por ambos, al Hospital Dr. Perea Inc., el Sindicato de Aseguradores para la Suscripción Conjunta de Seguro de Responsabilidad Médico-Hospitalaria (SIMED) y a Saint Paul Fire & Marine Insurance Company.

demandantes no estaban presentes los elementos de negligencia y relación causal que ameritaba la concesión de un remedio.

Mediante sentencia a esos efectos, el Tribunal de Primera Instancia, Sala Superior de Mayagüez, acogió la moción de desestimación presentada por los demandados y desestimó la demanda radicada. Aun cuando el referido foro, en sus determinaciones, dejó claramente establecido el hecho de que el doctor Díaz Troche incurrió en negligencia al lacerar el ducto biliar de la señora Lebrón durante la primera intervención realizada y que la referida laceración "fue la que propició que la demandante tuviera que ser intervenida nuevamente", dicho foro resolvió que los demandantes fallaron en "establec[er] el elemento de la relación causal entre la negligencia de los demandados y los daños, conforme lo requiere la normativa vigente." A esos efectos, señaló que "[d]e los testimonios reseñados es claro que no hubo ni una pizca de evidencia sobre los sufrimientos de la parte demandante" y que ésta descansó en que "al demostrar la negligencia quedaban demostrados los daños."

Inconforme con la determinación del foro de instancia, la parte demandante acudió ante el Tribunal de Apelaciones. El referido foro intermedio confirmó la determinación del tribunal de instancia. Aun insatisfechos, los demandantes acudieron ante este

Tribunal, mediante recurso de *certiorari.* Expedimos el mismo.

## II

En el día de hoy una mayoría de este Tribunal <u>revoca</u> la determinación del tribunal de primera instancia al concluir que los demandantes cumplieron con su obligación de establecer la existencia de un daño real y la relación causal entre el acto médico negligente y el daño sufrido. De este modo, la Mayoría concluye que los aquí demandados deben responder solidariamente por las angustias físicas y mentales sufridas por los demandantes y le concede a la señora Lebrón Correa la compensación de $20,000 en daños[2].

## III

De entrada, precisa establecer que somos del criterio que la parte demandante presentó prueba que podría ser suficiente en derecho para sostener una sentencia favorable a ella, luego de la misma ser avalada por el tribunal de instancia en conjunto con la prueba que, <u>en su día</u>, debería poder presentar la parte demandada; esto es, entendemos que los demandantes efectivamente presentaron prueba sobre la negligencia en que incurrió el doctor demandado, sobre los daños producidos y sobre el elemento

---

[2] La Mayoría, curiosamente, nada dispone en cuanto a los daños de los menores demandantes.

de la relación causal entre los daños sufridos y la negligencia de los demandados. Así surge claramente de la exposición narrativa de la vista celebrada ante el foro de instancia y de la prueba documental que consta en los autos.

En primer lugar, en esta etapa de los procedimientos no existe controversia en torno a que al realizar la primera intervención, el doctor Díaz Troche laceró el ducto biliar de la demandante lo que provocó que sufriera una peritonitis biliar que obligó a realizar una <u>segunda intervención</u>.[3] Además, ante el foro de instancia desfiló prueba en cuanto a que, luego de esta segunda operación, la señora Lebrón experimentó un sangrado profuso que obligó a transfundirla en seis ocasiones y que provocó una <u>tercera intervención quirúrgica</u>, la cual fue realizada de emergencia cuando ésta comenzó a vomitar sangre.

Del mismo modo, es un hecho incontrovertido que esta tercera intervención resultó en la remoción de la mitad del estómago de la demandante como consecuencia de una gastritis hemorrágica debido a "ulceración por stress". Asimismo, quedó probado que como consecuencia de esta secuela de intervenciones la señora Lebrón estuvo hospitalizada por espacio de tres semanas, durante las

---

[3] En su sentencia el foro de instancia concluyó que la laceración se debió a la <u>negligencia</u> del cirujano y que ésta fue la causa de que la demandante tuviera que ser intervenida en dos ocasiones posteriores.

cuales sufrió intensos dolores, angustias y complicaciones y se vio obligada a desatender el cuidado de sus hijos.

Como vemos, es evidente que en el caso de autos no estamos ante un caso claro de "ausencia de prueba" que dé paso a una desestimación al amparo de la Regla 39.2 (c) de las de Procedimiento Civil.[4] De la prueba desfilada ante el foro de instancia surge claramente la existencia de evidencia necesaria para sostener --en esta etapa de los procedimientos-- la demanda de daños y perjuicios incoada por la parte demandante.

Sobre este particular, hemos sido enfáticos al señalar que en nuestra jurisdicción, para que proceda la desestimación de una causa de acción bajo la Regla 39.2(c), es menester que no exista duda en cuanto a que la parte demandante no tiene derecho a la concesión de

---

[4] La referida Regla establece:

> Después que el demandante haya terminado la presentación de su prueba, el demandado, sin renunciar al derecho de ofrecer prueba en el caso de que la moción sea declarada sin lugar, podrá solicitar la desestimación, fundándose en que bajo los hechos hasta ese momento probados y la ley, el demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra el demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. A menos que el tribunal en su orden de desestimación lo disponga de otro modo, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se hubiere dictado por falta de jurisdicción, o por haber omitido acumular una parte indispensable, tienen el efecto de una adjudicación en los méritos.

remedio alguno. Si la prueba presentada por dicha parte tiende a demostrar que bajo alguna circunstancia ésta podría prevalecer, entonces "[l]a duda que surge del testimonio del demandante requiere que [el demandado] presente su caso, lo que dará al tribunal una visión más completa de los hechos". Colombani v. Gob. Municipal de Bayamón, 100 D.P.R. 120, 122-23 (1971).

A tono con lo anterior, hemos señalado que para que proceda la desestimación de la demanda es menester que el tribunal esté plenamente convencido de que el demandante no tiene oportunidad alguna de prevalecer. Roselló Cruz v. García, 116 D.P.R. 511, 520 (1985); Irrizary v. A.F.F., 93 D.P.R. 416, 420-21 (1966). Definitivamente, estamos totalmente convencidos de que este no es el caso que hoy tenemos ante nuestra consideración.

IV

Ahora bien, nos resulta imposible suscribir --y endosar con nuestro voto-- el lamentable error procesal en el que incurre la Mayoría en el presente caso. Esto es, nos parece en extremo desacertado, y erróneo, que este Tribunal, luego de establecer la improcedencia de una desestimación bajo la Regla 39.2 (c), proceda a resolver "en su totalidad" la reclamación incoada sin permitir la continuación procesal del caso ante el foro de instancia.

Sobre este particular, conviene puntualizar que la Regla 39.2 (c), ante, es clara al establecer que al

presentar una moción de desestimación por este fundamento, el demandado no renuncia a presentar su prueba en caso de que la moción sea declarada sin lugar. Ignorando por completo esta disposición reglamentaria, y en su afán por alcanzar el resultado deseado, la Mayoría hace caso omiso de las limitaciones procesales establecidas en esta Regla, optando por ignorar la máxima de que la "esencia del debido proceso de ley es que nadie sea privado de su propiedad sin darle la oportunidad de ser oído." Véase: Carrero Suárez v. Sánchez López, 103 D.P.R. 77, 78 (1974). Este derecho incluye, desde luego, la oportunidad de presentar evidencia. Véase: Pagán v. Registrador, 62 D.P.R. 594, 597 (1943).[5]

Resulta patentemente claro, en consecuencia, que lo procesalmente correcto es que el Tribunal devuelva el caso al tribunal de instancia para que la parte demandada tenga oportunidad --si es que ésta así lo entiende procedente-- de presentar su prueba; luego de lo cual el foro de instancia deberá resolver el caso en los méritos.

---

[5] Sólo así se vería cumplida la norma reiteradamente sostenida por este Foro de que los tribunales tienen que velar que la interferencia con los intereses propietarios del individuo se haga a través de un procedimiento que en esencia sea justo y equitativo. Almonte v. Brito, res. el 2 de abril de 2002, 2002 T.S.P.R. 37; Rivera Rodríguez & Co. v. Lee Stowell, 133 D.P.R. 881, 887-88 (1993); Rodríguez Rodríguez v. E.L.A., 130 D.P.R. 562, 578 (1992), López Vives v. Policía de Puerto Rico, 118 D.P.R. 219 (1987).

V

Pero, hay más. Aun cuando pasáramos por alto la crasa violación al debido proceso de ley en que incurre la Mayoría, respecto al derecho de la parte demandada a presentar prueba a nivel de instancia --resulta importante enfatizar la, igualmente, crasa injusticia que comete la Mayoría con la demandante Lebrón Correa al concederle a ésta la irrisoria suma de $20,000.00 por los daños por ella sufridos. Dicho de otra forma, aun si consideráramos, a los fines de la argumentación, que este Tribunal puede resolver, en esta etapa de los procedimientos, la reclamación de daños aquí presentada, procede que nos preguntemos: ¿cómo es posible que la Mayoría considere, como adecuada y justa, la suma de dinero antes mencionada ante el hecho innegable de que la demandante sufrió tres intervenciones quirúrgicas?

Pero, aun hay más; como si lo anteriormente señalado fuera poco, el Tribunal incurre en la comisión de una tercera injusticia. Como se desprende de la Sentencia mayoritaria emitida, el Tribunal no le concede un solo centavo de compensación a los hijos de la demandante Lebrón Correa-- quienes, también, son demandantes en el caso-- a pesar de que en la Sentencia emitida se señala que dichas personas testificaron en la vista celebrada sobre los sufrimientos que tuvieron respecto a la situación que experimentara su señora madre. La Mayoría,

sorprendentemente, guarda total silencio sobre este asunto.

VI

Como anteriormente expresáramos, permanecer en silencio ante las graves injusticias que comete el Tribunal en el presente caso, contra ambas partes, nos convertiría, a nuestra manera de ver las cosas, en cómplice de las mismas. No podemos hacerlo; es por ello que disentimos.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado