ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| MILLY AGNES MORALES KUILAN<br><br>Apelante<br>v.<br><br>GRUPO EPEM, CORP. h/n/c TOYOTA DE BAYAMÓN Y ASEGURADORA ABC<br><br>Apelada | **KLAN202401118** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br>Civil Núm. BY2023CV00750<br><br>Sobre:<br>Despido Injustificado; Ley 100, Ley 69, Salarios; Vacaciones, Horas Extras; Ley 2 Procedimiento Sumario |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 19 de marzo de 2025.

Comparece ante foro la Sra. Milly A. Morales Kuilan (señora Morales o "la apelante") y nos solicita que revisemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, notificada el 6 de diciembre de 2024. Mediante el referido dictamen, el foro primario desestimó la *Querella* presentada por la apelante al amparo de la Regla 39.2(C) de Procedimiento Civil, 32 LPRA Ap. V, R.39.2 (C).

Por los fundamentos que se exponen a continuación, **CONFIRMAMOS** la *Sentencia* apelada.

### I.

El 10 de febrero de 2023, la recurrida instó una *Querella* sobre la Ley Núm. 100 de 30 de junio de 1959, según enmendada conocida como *Ley contra el Discrimen en el Empleo*, la Ley 69 de 6 de julio de 1985 conocida como

*Ley para Garantizar la Igualdad de Derecho al Empleo*, la Ley Núm. 80 de 30 de mayo de 1976, según enmendada conocida como *Ley sobre Despidos Injustificados*, Ley 379 de 15 de mayo de 1948, según enmendada conocida como *Ley para establecer la Jornada de Trabajo en Puerto Rico* y la Ley 180 de 27 de julio de 1998, según enmendada conocida como *Ley de Vacaciones y Licencia por enfermedad de Puerto Rico*, según enmendada y la Regla 3.1 y 3.5 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 3.1 y 3.5, en contra de Grupo Epem Corp. (Grupo Epem o apelada) y sus aseguradoras. Dicha *Querella* la interpuso al amparo del procedimiento sumario dispuesto en la Ley Núm. 2 del 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118, *et seq.*[1] En esencia, alegó que, fue contratada por el Grupo Epem el 19 de noviembre de 2020, como representante de venta de autos. Sostuvo que laboró en dicha compañía por dos (2) años y, que su desempeño fue satisfactorio. No obstante, arguyó que el 5 de diciembre de 2022, fue despedida sin justa causa y de manera discriminatoria. Señaló que, no le ofrecieron una razón para su despido y, tampoco le entregaron una carta de despido.

Además, esbozó que el Grupo Epem cambió de manera arbitraria y caprichosa las políticas de ventas y cuotas, por lo que dicho cambio comenzó a generar memorandos y amonestaciones a los empleados. Añadió que recibió una reprimenda verbal y una suspensión. Ello porque el dealer no contaba con inventario suficiente para vender autos. A su vez, adujo que el Grupo Epem adoptó un patrón discriminatorio contra las féminas de

---

[1] *Querella*, anejo I, págs. 1-8 del apéndice del recurso.

la compañía, lo que culminó en su despido. Por todo lo anterior, solicitó la suma de $40,000.00 por concepto del discrimen por razón de sexo que resultó en su despido, $39,713.49 por mesada, $435.20 por semana a fondo, $2,491.64 por vacaciones adeudadas; $7,353.46 por comisiones adeudadas, $3,133.44 por horas extras no pagadas, $6,000 por daños y perjuicios ocasionados por no pagar horas extras, $4,644.50 por pago que dedujo ilegalmente, más el pago de costas y honorarios de abogados no menor del 25% para un total de $25,942.93.

En respuesta, el 21 de febrero de 2023, el Grupo EPEM presentó su *Contestación a la Querella* en la cual negó la mayoría de las alegaciones.[2] En lo pertinente, aceptó que despidió a la señora Morales con justa causa, puesto que, luego de varias amonestaciones no mejoró su desempeño, afectando el buen y normal funcionamiento de la empresa. Asimismo, indicó que no se le debía cantidad alguna por concepto de vacaciones, horas extras, por concepto de mesada, despido injustificado, ni discrimen. Aclaró que, la apelante no cumplió con sus deberes y, las políticas de la compañía aplicaban por igual a todos los vendedores. Además, planteó que las alegaciones de la señora Morales eran insuficientes, por lo que no logró establecer un caso de discrimen ni despido injustificado. Finalmente, manifestó que el procedimiento sumario no era aplicable al caso de epígrafe, toda vez que se estaban reclamando daños y angustias mentales. En virtud de lo anterior, solicitó la desestimación de la *Querella* y el pago de gastos, costas y honorarios de abogado.

---

[2] *Contestación a la Querella*, anejo II, págs. 9-18 del apéndice del recurso.

Tras varios trámites procesales, el 29 de junio de 2023, el Grupo Epem presentó una *Moción Solicitando se Dicte Sentencia por la Vía Sumaria*.[3] En primer lugar, enumeró cincuenta y cinco (55) hechos que, a su juicio, no estaban en controversia. En síntesis, reiteró que, la señora Morales fue despedida por justa causa y no fue objeto de discrimen alguno. Enfatizó que, se llevó a cabo un proceso de disciplina progresiva y brindó las herramientas necesarias para que la apelante mejorase su desempeño. No obstante, esgrimió que la apelante incumplió reiteradamente con las funciones de su puesto. Particularmente, argumentó que, la apelante conocía que la cuota de ventas de carro era de diez (10) autos mensuales. Sin embargo, alegó que, las amonestaciones verbales y escritas, debido a su baja producción, conllevaron a su despido el 5 de diciembre de 2022. De otra parte, reconoció que la cuota mínima de ventas de diez (10) autos cambiaba para ajustarse al mercado y problemas de inventario. Incluso, explicó que tenían reuniones constantes con los empleados con relación a los esfuerzos y ajustes que debían hacer en las ventas. Por lo cual, razonó que no existía controversia alguna sobre los hechos esenciales del litigio.

En desacuerdo, el 21 de julio de 2023, la señora Morales presentó su *Oposición a Solicitud de Sentencia Sumaria* en la cual señaló los hechos que consideraba estaban en controversia.[4] Luego, esgrimió que, que el despido fue sin justa causa y de manera discriminatoria. Sostuvo que, su desempeño en la empresa fue en

---

[3] *Moción Solicitando se dicte Sentencia por la Vía Sumaria*, anejo VII, págs. 37-299 del apéndice del recurso.
[4] *Oposición a Solicitud de Sentencia Sumaria*, anejo VIII, págs. 300-359 del apéndice del recurso.

incremento, al demostrar que tuvo un mayor ingreso del 2021 al 2022. A su vez, manifestó que la parte apelada no ofreció adiestramientos, ni tampoco otorgó herramientas para incrementar la capacidad de las ventas. También, sostuvo que Grupo EPEM tuvo problemas con la falta de inventario, lo que provocó que realizaran ajustes en la cuota de ventas, reconociendo que no había capacidad para cumplir con la cuota de ventas. Por tal razón, solicitó al foro primario que denegara la moción de sentencia sumaria presentada por el Grupo Epem.

Luego de evaluar las mociones y argumentos de las partes, el 12 de octubre de 2023, el foro primario emitió una *Resolución*, que se notificó en la misma fecha, en la cual declaró *No Ha Lugar* la moción de sentencia sumaria y ordenó la continuación de los procedimientos.[5] Mediante esta, realizó cuarenta y tres (43) determinaciones de hechos que no estaban en controversia. Dicho foro concluyó que existían varios hechos en controversia que impedían la resolución por la vía sumaria. En específico, determinó que existían controversia en los siguientes hechos esenciales: sobre la conversación que tuvo la señora Morales con la Sra. Grisselle García Morales, gerente general de Grupo EPEM, al momento del despido de la apelante y el no reubicarla con otro grupo del dealer, si en efecto Grupo EPEM tuvo dificultades con el inventario de autos, entonces cuál fue la razonabilidad de las amonestaciones por incumplimiento de cuotas, puesto que, la parte apelada no presentó las alegadas métricas, entre otros.

---

[5] *Resolución*, anejo III, págs. 17-39 del apéndice del recurso.

Inconforme con el dictamen del foro primario, el 23 de octubre de 2023, el Grupo Epem presentó una *Petición de Certiorari* ante este foro, al cual se le asignó el alfanumérico KLCE2023001169.[6] En este solicitó se revocase la *Resolución* del 12 de octubre de 2023. Atendido dicho recurso, este Tribunal de Apelaciones dictó una *Resolución* en la cual denegó el recurso de *Certiorari*.[7]

Tras varias incidencias procesales las cuales nos son necesarias pormenorizar, el 21 de marzo de 2024, las partes presentaron su *Informe Preliminar de Conferencia con Antelación a Juicio*. Particularmente, estipularon cuarenta (40) hechos sobre los cuales no existía controversia. Así las cosas, el 11 de marzo de 2024, el foro primario celebró una vista en la cual acogió el *Informe Preliminar de Conferencia con Antelación a Juicio.* Además, señaló juicio en su fondo para el 23, 24, 25 y 27 de septiembre de 2024.

Celebrado el juicio en su fondo los días 23 y 24 de septiembre de 2024, las partes notificaron al Tribunal que habían transigido extrajudicialmente la reclamación de comisiones y vacaciones. Específicamente, informaron que habían acordado que el Grupo Epem emitiría unos cheques a favor de la señora Morales por la suma de $2,941.64 de vacaciones y $7,353.46 de comisiones, esta última luego de realizar las deducciones correspondientes. Luego de culminar el proceso de interrogatorio a los testigos, el Grupo Epem presentó en

---

[6] Certiorari, anejo XIII, págs. 419-869 del apéndice del recurso.
[7] El 1 de diciembre de 2023, el Grupo Epem presentó un recurso de *Certiorari* ante el Tribunal Supremo de Puerto Rico. No obstante, el 2 de febrero de 2024, dicho foro emitió una *Resolución* en la cual declaró No Ha Lugar el recurso de *Certiorari*. Resolución, anejo XIX, págs. 1365-1366 del apéndice del recurso.

corte abierta una moción una *Solicitud de Desestimación de la Demanda al amparo de la Regla 39.2 (c) de Procedimiento Civil*, *supra*. Ello, toda vez que la apelante no tenía derecho a la concesión de remedio alguno. Sostuvo que la señora Morales no logró descargar el peso de prueba requerido para probar su causa de acción por despido injustificado.[8]

Por su parte, la apelante argumentó que las alegaciones de discrimen fueron sobre un supervisor al cual no se reportaba. Además, señaló que aun tomando en consideración los días de vacaciones y enfermedad y reduciendo dichos días y la cuota requerida prorrateada por los días en que, si trabajó, no hubiese realizado las cuotas en los dos (2) meses en los cuales tomó vacaciones y enfermedad, con una cuota reducida resultado del prorrateo. Luego de escuchar los planteamientos de ambas partes, el foro primario declaró Ha Lugar la *Solicitud de Desestimación de la Demanda al amparo de la Regla 39.2 (c) de Procedimiento Civil*, *supra*. Consecuentemente, desestimó la causa de acción por falta de prueba, por lo que entendió que el despido fue justificado.[9]

Cónsono con lo anterior, el 6 de diciembre de 2024, el foro primario notificó su *Sentencia* en la cual desestimó la *Querella* con perjuicio, conforme a la Regla 39.2(c) de procedimiento Civil, *supra*, toda vez que, la señora Morales no tenía derecho a la concesión de remedio alguno. En primer lugar, realizó las siguientes determinaciones de hechos:

---

[8] *Minuta*, anejo XXVI y XXVII, págs. 1684-1697 del apéndice del recurso.
[9] *Minuta*, anejo XXVI y XXVII, págs. 1684-1697 del apéndice del recurso.

1. La parte Querellante es, Milly Agnes Morales Kuilan (en adelante "Sra. Morales Kuilan").

2. La parte Querellante reside en la Urbanización Villas de San Agustín P39 Calle 12, Bayamón, Puerto Rico, 00959.

3. La parte Querellante Sra. Morales Kuilan, fue contratada para trabajar a jornada completa y por tiempo indeterminado con Grupo Epem, Inc. (en adelante "Grupo Epem"), el día 19 de noviembre de 2020.

4. La parte Querellante fue contratada para la posición de Representante de Ventas de Autos.

5. La parte Querellada, lo es Grupo Epem.

6. Grupo Epem hace negocios como Toyota de Bayamón.

7. Grupo Epem es una compañía con fines de lucro dedicada a la venta de autos que opera el concesionario "dealer" de autos Toyota de Bayamón y la cual está registrada en el Departamento de Estado bajo el número 161113.

8. Las oficinas de Grupo Epem están localizadas en la Carr. 167 marginal A-17, Urb. Royal Gardens, Bayamón.

9. La parte Querellante fue despedida de empleo y sueldo el día 5 de diciembre de 2022.

10. El salario anual más alto devengado fue en el año 2022 con la suma de $121,476.56.

11. La Querellante fue despedida por la Sra. Griselle M. García Morales (en adelante "Sra. García Morales").

12. La Sra. García Morales llegó a Grupo Epem para el año 2017.

13. La Sra. García Morales es Gerente General de Grupo Epem.

14. La Sra. García Morales en ocasiones firmaba las cartas identificándose como Presidente y en otras se identificaba como Vice-Presidenta.

15. El inventario de autos que Grupo Epem tiene disponible para la venta es financiado. El financiamiento se adquiere a través de una línea de crédito provista por una institución financiera, la cual cobra la tasa de interés prevaleciente en el mercado por el balance pendiente de pago de dicha línea de crédito. Cada vez que Grupo Epem

vende un auto y recibe el pago del precio de venta, salda el balance pendiente de la línea de crédito asociada con el costo de adquirir dicho vehículo.

16. Como parte de los costos asociados al inventario, Grupo Epem paga además al Centro de Recaudación de Ingresos Municipales (CRIM) una contribución municipal sobre la propiedad sobre el valor promedio de dicho inventario. Por lo tanto, a mayor número de vehículos sin vender en su inventario, mayores son los costos asociados al financiamiento y contribuciones sobre dicho inventario.

17. La oferta de empleo de la Querellante establece que su compensación es de $10.88 por hora contra las comisiones.

18. El salario de la Querellante es contra comisiones.

19. Cuando a la Querellante le hicieron la oferta de empleo le indicaron que la cuota de ventas de carro era de diez (10) autos.

20. Durante la contratación de la Querellante la cuota de ventas de carros sufrió cambios de tiempo en tiempo.

21. A la Querellante le entregaron las distintas políticas de la empresa, entre estas; Política de Licencia por Vacaciones, Política de Uso y Manejo de CDK CRM, Política de Desempeño y Medición Representante de Venta, Descripción de Puesto, Ciclo en el Proceso de Ventas y Cuotas Mínimas de Tareas de Contactos y Ventas.

22. El patrono Querellado estableció una Política de Desempeño, Medición y Plan de Incentivos Para Representante de Ventas de Autos.

23. El 16 de noviembre de 2020, la Querellante firmó la Política de Desempeño, Medición y Plan de Incentivos Para Representante de Ventas de Autos establecida por el patrono Querellado.

24. Comenzando en enero de 2022 el periodo de evaluación sería de enero hasta diciembre.

25. Antes de enero de 2022 el período de evaluación era del 1 de julio al 30 de junio.

26. El 5 de diciembre de 2022, la Sra. García Morales se reunió con la parte Querellante y despidió a Sra. Morales Kuilan.

27. La Descripción del Puesto de Representante de Ventas establece directamente que las responsabilidades de este puesto son encargarse de vender vehículos nuevos bajo los márgenes de ganancia y volúmenes establecidos por el Presidente de la Empresa y cumplir con la cuota mensual establecida de vehículos usados y nuevos.

28. La cuota mínima de ventas de diez (10) autos cambiaba para ajustarse a la situación que estuviera atravesando el mercado y/o los problemas de inventario. La bajaban a seis (6), a siete (7), a ocho (8). Incluso llegaron a condonarla.

29. El 21 de febrero de 2022, la Querellante recibió una Amonestación Escrita por incumplir la cuota de diciembre de 2021 (vendió 5 vehículos.)

30. Con respecto al período del año 2022, la Querellante fue amonestada por incumplimiento de cuotas tres veces y luego despedida. El desglose de las amonestaciones es el siguiente:

    1) Amonestación Escrita el 3 de marzo de 2022 por incumplir la cuota de febrero de 2022 (vendió 7 vehículos);
    (2) Amonestación Escrita el 10 de junio de 2022 por incumplir la cuota de mayo de 2022 (vendió 8 vehículos);
    (3) Suspensión de Empleo y Sueldo el 13 de septiembre de 2022 por incumplir la cuota de agosto de 2022 (vendió 3 vehículos);
    (4) Despido el 5 de diciembre de 2022 por incumplir la cuota de noviembre de 2022 (vendió 2 vehículos).

31. Al momento de ser contratada, a la Querellante se le entregó un libreto con la descripción de cómo manejar llamadas telefónicas para atender clientes cuyo título es Política Manejo Llamadas Telefónicas y Protocolo para la Atención al Cliente.

32. Tomando en consideración las comisiones generadas por Sra. Morales Kuilan durante su empleo con Grupo Epem, ésta siempre pudo cubrir y sobrepasar el salario base por hora de $10.88.

33. El Patrono Querellado, Grupo Epem no liquida las cantidades por concepto de comisiones, salario y vacaciones al momento de la terminación, ya que se tiene que realizar el correspondiente cuadre.

34. La administración de Grupo Epem realiza planes y proyecciones anuales de ventas de autos para estimar los costos y las ganancias asociados con la operación del negocio. De igual forma realiza pronósticos de ventas para cada mes de cada año.

35. En Grupo Epem cada Representante de Ventas es responsable de cumplir con todos los procesos y objetivos establecidos en el Departamento de Ventas. El Proceso de Manejo de Desempeño a los Representantes de Venta le permite a la empresa establecer objetivos, discutir progreso, identificar áreas de oportunidad y acordar planes de mejoramiento y Desarrollo.

36. La oferta de empleo de la Querellante establece en cuanto a la licencia de vacaciones y en lo pertinente, que al trabajar por lo menos ciento treinta (130) horas al mes; la acumulación mínima será medio (1/2) día durante el primer año de servicio; tres cuartos (3/4) de día después del primer año de servicio hasta cumplir cinco (5) años de servicio.

37. A todos los empleados se les notifica la Política de Desempeño, Medición y Plan de Incentivos Para Representante de Ventas de Autos en donde se les enfatiza su deber de cumplir con las cuotas mensuales de ventas establecida y específicamente se les notifica las medidas disciplinarias progresivas que se tomarán si fallan en cumplir con las mismas. La parte Querellante firmó el 16 de noviembre de 2020 dicha política. La Política establecía una venta mínima de diez (10) unidades. El ciclo de evaluación conforme a la Política era el siguiente:

• Amonestación Verbal Documentada- 1'er (primer) mes (durante cualquier periodo dentro del año fiscal) sin cumplir con la cuota mínima requerida de ventas. En reunión con Representante de Ventas se documentará el incumplimiento de cuota mensual y se le exhortará a cumplir con la misma.
• Amonestación Escrita (Primera Advertencia Escrita)- 2'do (segundo) mes (durante cualquier periodo dentro del año fiscal) sin cumplir con la cuota mínima requerida de ventas. En reunión con Representante de Ventas se documentará la repetida incidencia del incumplimiento de cuota mensual y se le exhortará nuevamente a cumplir con la misma.
• Suspensión (Segunda Advertencia Escrita)- 3'er (tercer) mes (durante cualquier periodo dentro del año fiscal)

sin cumplir con la cuota mínima requerida de ventas. En reunión con Representante de Ventas se documentará la repetida incidencia del Incumplimiento de cuota mensual y se le notificará por escrito que de repetir el Incumplimiento de cuota mensual se realizará una Terminación de Empleo (Despido).
• Terminación de Empleo- 4'to (cuarto) mes (durante cualquier periodo dentro del año fiscal) sin cumplir con la cuota mínima requerida de ventas.

38. Como parte del procedimiento de disciplina progresiva el 13 de septiembre de 2022, la Sra. Milly Agnes Morales fue suspendida de empleo y sueldo por cinco (5) días laborables según se le había advertido en la amonestación anterior con fecha de 10 de junio de 2022.

39. Entre las gestiones que realizó Grupo Epem para ayudar a la parte Querellante a cumplir con sus ventas se encuentran: proveer las herramientas necesarias para mover sus redes sociales y páginas de venta; proveer un sistema que identificaba a posibles personas interesadas en comprar automóviles para que los y las vendedoras pudieran contactarlos; proveer adiestramientos para mostrarle a los vendedoras y las vendedoras los modelos y aplicaciones nuevas; ajustar la cuota de ventas mensual en varias ocasiones y en una ocasión la condonó; etc.

40. El 5 de diciembre de 2022, la empresa tomó la decisión de despedir, además de a la Sra. Morales Kuilan, al Sr. José Juan Morales Serrano.

41. La Sra. García Morales participó en el reclutamiento de la Querellante.

42. La Querellante testificó que trabajaba en el grupo del Sr. Peter Ramos.

43. El testimonio de la parte Querellante estableció que ésta no se reportaba al Sr. Jonathan Meléndez y que éste no fue quien la despidió.

44. La Querellante testificó que el problema de inventario comenzó en el mes de junio de 2022. Sin embargo, cuando había inventario en los meses anteriores, la Sra. Morales Kuilan incumplió con su cuota asignada, toda vez que ni en el mes de febrero ni en el mes de mayo de 2022 alcanzó las cuotas de ventas.

45. Asimismo, la Querellante testificó que el problema de inventario comenzó en el mes de junio de 2022. Sin embargo, admitió que

cumplió con la cuota asignada en el mes de julio de 2022 y que incumplió con la cuota del mes de agosto de 2022 por enfermedad.

46. La Querellante testificó que "problema de inventario" no es lo mismo a que "no había inventario, ya que el problema de inventario no era necesariamente por falta de autos, sino por falta de marcas (modelos), colores, etc.

47. El testimonio de la parte Querellante en este caso estableció que, aun tomando en consideración los días de vacaciones y enfermedad, y reduciendo dichos días y la cuota requerida prorrateada, la Sra. Morales Kuilan no hizo las cuotas en esos dos (2) meses donde tomó vacaciones y enfermedad, con una cuota reducida.

48. El Sr. José Juan Morales Serrano testificó que tomó fotografías de uno de los cuatro lotes del concesionario para el mes de octubre de 2022.

49. El Sr. José Juan Morales Serrano testificó que, si no quedaban carros en las fotos que tomó de uno de los lotes del concesionario en el mes de octubre de 2022, es porque en ese mes todos los vendedores lograron vender y sobrepasar la cuota de ventas.

50. La Querellante testificó que cuando Grupo Epem cambió el ciclo de evaluación en el año 2022 para que fuera de enero a diciembre y no de junio a julio, este cambio la benefició ya que no se iba a tomar en consideración el Memo por Incumplimiento de Cuota que había recibido en el mes de diciembre de 2021.

51. La Querellante testificó que en la industria de autos se despide a los empleados que no cumplen la cuota de ventas establecida.

52. La Querellante testificó que entre los demás empleados que no cumplían con la cuota de ventas se encontraban Jean Carlos, Miguel, Rudy y Christian "Picky" Pérez, empleados que pertenecían al grupo del Sr. Jonathan Meléndez. Sin embargo, la Querellante indicó que desconocía si estos empleados fueron amonestados por incumplir con las cuotas de ventas.

53. El testimonio de la Querellante estableció que, con anterioridad a su despido, nunca le solicitó un cambio de área de trabajo a la Sra. Griselle García Morales.

54. Este Tribunal concluye que la Querellada despidió a la Sra. Morales Kuilan por ésta

haber incumplido la cuota de ventas establecida en cuatro (4) ocasiones durante el año 2022, de conformidad con el Ciclo de Evaluación de la Política de Desempeño, Medición y Plan de Incentivos Para Representante de Ventas de Autos, que la Querellada había recibido como empleada.

55. La evidencia admitida y creída por este Tribunal establece que la cuota de ventas de autos era aplicada de manera uniforme por Grupo Epem a todos los vendedores y las vendedoras de autos, por lo que no hubo un ánimo discriminatorio por parte de la Querellada hacia la Sra. Morales Kuilan.

56. La evidencia estableció que en las facilidades del Querellado se encontraban ubicados afiches que establecían Políticas en contra del discrimen y el procedimiento que podían utilizar para presentar una queja si entendían que eran víctimas de discrimen.

57. Este Tribunal no tuvo ante sí evidencia de la reclamación de horas extras de la Querellante, del descuento de salario ni del reclamo de una semana a fondo.

58. Las reclamaciones de comisiones y vacaciones fueron transigidas por las partes al comienzo del juicio.

En vista de las determinaciones de hechos antes formuladas, el foro primario determinó que, correspondía a la señora Morales probar que Grupo Epem la despidió de manera discriminatoria y, por consiguiente, injustificada. No obstante, resaltó que la apelante no desfiló prueba alguna para sustentar sus alegaciones de que Grupo Epem aplicaba las cuotas de ventas mensuales de manera arbitraria y con el propósito de despedir a todas las mujeres de la compañía. De igual forma, enfatizó que en las distintas ocasiones en que la apelante incumplió las cuotas de ventas, no fue porque Grupo Epem tenía un problema de inventario.

Por otra parte, el foro primario concluyó que, conforme a la prueba desfilada, la señora Morales no probó un caso de discrimen por razón de sexo. Destacó

que, las únicas alegaciones respecto a su reclamación de discrimen por razón de sexo fueron que al Sr. Jonathan Meléndez no le gustaba trabajar con mujeres. Sin embargo, indicó que la apelante no se reportaba al Sr. Jonathan Meléndez y no fue este quien la despidió, sino que fue la Sra. Grisselle García. Por tanto, razonó que la señora Morales no puso al Tribunal en posición de concluir que fue víctima de discrimen por razón de sexo. En virtud de lo anterior, determinó que tanto el despido como la relación de empleo de la apelante con Grupo Epem no fue discriminatoria.

Respecto a la venta de autos, el foro primario resolvió que el despido de la señora Morales se debió a su incumplimiento con las cuotas de ventas establecidas por la compañía y no respondió a un ánimo discriminatorio. Sostuvo que dichas cuotas de ventas eran aplicadas de manera uniforme a todos los vendedores de autos. Señaló que la política con relación a las consecuencias del incumplimiento con las cuotas de venta fue notificada a la apelante desde que comenzó a trabajar en Grupo Epem. Por tanto, el foro primario resolvió que la señora Morales no demostró que Grupo Epem tuvo un problema de inventario para el año 2022, específicamente en los meses que esta incumplió con la cuota de ventas. Finalmente, en cuanto a las reclamaciones de salarios y horas extras, el foro primario concluyó que no tuvo ante sí evidencia de la reclamación de horas extras, del descuento de salario ni del reclamo de una semana a fondo. Por lo tanto, determinó que la apelante no logró demostrar que se le adeudaba cantidad alguna por concepto de salarios y horas extras.

Inconforme, el 13 de diciembre de 2024, la apelante presentó el recurso que nos ocupa y formuló los siguientes señalamientos de error:

Erró el honorable Tribunal de Primera Instancia como cuestión de hecho y de derecho al desestimar la causa de acción de la querellante al amparo de la Regla 39.2(C) de Procedimiento Civil sin haber escuchado la parte querellada cuando la reclamación versa sobre discrimen.

Erró el honorable Tribunal de Primera Instancia e incurrió en prejuicio, parcialidad, error manifiesto al determinar que el despido de la querellante fue con justa causa.

Erró el honorable Tribunal de Primera Instancia al decidir que el patrono tiene el peso de la prueba para establecer que el despido de la querellante estuvo justificado contrario a lo resuelto en *Díaz v. Wyndham*, 155 DPR 364 (2001).

Erró el Tribunal de Primera Instancia al decidir que la querellante no presentó prueba suficiente sobre discrimen por razón de sexo.

Además, el 13 de diciembre de 2024, la apelante presentó una *Moción al Amparo de la Regla 76 del Reglamento del Tribunal de Apelaciones Sobre Transcripción de la Prueba Oral*. En esta, informó que presentaría la transcripción de la prueba oral en su totalidad. Conforme lo anterior, el 7 de febrero de 2025, la señora Morales presentó la *Transcripción de Vista*. Atendido el recurso, el 18 de diciembre de 2024, emitimos una *Resolución* concediéndole a la parte apelada el término dispuesto en el Reglamento de este Tribunal para presentar su alegato. Conforme ordenado, el 20 de diciembre de 2024, la parte apelada presentó su *Alegato en Oposición de la Parte Apelada*.

Estando en posición de resolver, procedemos a así hacerlo.

**II.**

-A-

La *Ley Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118, según enmendada, establece un mecanismo especial para la rápida consideración y adjudicación de las querellas presentadas empleados, principalmente, en las reclamaciones en torno a salarios, beneficios o derechos. *Peña Lacern v. Martínez Hernández*, 210 DPR 425, 434 (2022). La naturaleza sumaria de este procedimiento procura desalentar los despidos injustificados y provee al obrero despidos medios económicos para su subsistencia mientras consigue un empleo. *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 265 (2018); *Aguayo Pomales v. R & G Mortg.*, 169 DPR 36, 43 (2006).

En aras de asegurar el trámite expedito, la precitada ley dispone que "se aplicarán las Reglas de Procedimiento Civil en todo aquello que no esté en conflicto con las disposiciones específicas de las mismas o con el carácter sumario del procedimiento establecido en esta ley." 32 LPRA sec. 3120. Esta limitación facilita "la rapidez y la celeridad de la resolución de las reclamaciones, propósito al que los tribunales deben dar estricto cumplimiento." *Dávila Rivera v. Antilles Shipping, Inc.*, 147 DPR 483, 492 (1999).

-B-

La Regla 39.2(c) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2(c) dispone lo siguiente:

> Después que la parte demandante haya terminado la presentación de su prueba, la parte demandada, sin renunciar al derecho de ofrecer

prueba en caso de que la moción sea declarada "sin lugar", podrá solicitar la desestimación fundándose en que bajo los hechos hasta ese momento probados y la ley, la parte demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra la parte demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. A menos que el tribunal lo disponga de otro modo en su orden de desestimación, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se haya dictado por falta de jurisdicción o por haber omitido acumular una parte indispensable, tienen el efecto de una adjudicación en los méritos. 32 LPRA Ap. V, R. 39.2(c).

Sin embargo, esta solicitud de desestimación solo procede cuando el juzgador queda convencido de que el demandante no puede prevalecer. *Roselló Cruz v. García*, 116 DPR 511, 520 (1985). De manera que al adjudicar una moción de desestimación al amparo de la Regla 39.2(c) de Procedimiento Civil, *supra*, el tribunal tiene la facultad para aquilatar la prueba presentada por la parte demandante y formular los hechos según la credibilidad que ésta la merezca. Por ello, nuestro más Alto Foro expresó que la discreción reconocida al Tribunal de Primera Instancia debe ejercerse "después de un escrutinio sereno y cuidadoso de la prueba, en caso de duda es preferible requerir al demandado que presente su caso". *Romero Arroyo y Otros v. E.L.A.*, 139 DPR 576, 579 (1995.

Ahora bien, para que proceda una desestimación al amparo de la Regla 39.2(c), *supra*, es necesario que en la causa de acción presentada haya ausencia de prueba y que el tribunal esté plenamente convencido de que la parte demandante no tiene derecho a la concesión de remedio solicitado ni oportunidad alguna de prevalecer. *S.L.G. Sierra v. Rodríguez*, 163 DPR 738, 746 (2005). De lo contrario, si el tribunal reserva

alguna duda, deberá ordenar al demandado presentar su prueba y luego adjudicar la solicitud de desestimación bajo la referida Regla 39.2(c), *supra*. *Lebrón v. Díaz*, 165 DPR 615, 627-628 (2005). Corresponde al Tribunal de Primera Instancia determinar si la prueba presentada por el demandante "es suficiente por sí misma para satisfacer los requisitos de su particular causa de acción". *Rivera Figueroa v. The Fuller Brush Co.,* 180 DPR 894, 916 (2011).

A tenor con lo anterior, debemos destacar que esta regla autoriza al juez que preside los procedimientos a aquilatar la prueba presentada por el demandante y formular su apreciación de los hechos según la credibilidad que le merezca. Ello es así, ya que el demandante no tiene que probar su caso con exactitud matemática mediante evidencia directa, ni de modo concluyente, tampoco que produzca un grado tan perfecto de convencimiento que no admita la posibilidad de prueba en contrario, pudiendo probar su caso con prueba indirecta. *Murcelo v. H.I. Hettinger & Co.*, 92 DPR 411 (1965). De manera que cuando la prueba tienda a mostrar que existe algún grado de certeza en las alegaciones del demandante, o de haber tan sólo una *cintilla* de evidencia para sostener una causa de acción, el tribunal deberá declarar la misma sin lugar. *Colombani v. Gob. Municipal de Bayamón*, 100 DPR 120, 122 (1971).

-C-

Nuestro ordenamiento estatutario no prohíbe absolutamente el despido de un empleado, sino que castiga el despido sin justa causa. *Rivera Figueroa v. The Fuller Brush Co*, 180 DPR 894 (2011).

Por un lado, la Ley Núm. 80 de 30 de mayo de 1976, conocida también como la *Ley de Despido Injustificado*, según enmendada, 29 LPRA sec. 185a *et seq.*, regula las circunstancias en que un patrono privado puede despedir a un empleado. La referida ley es una legislación reparadora, por lo cual hay que interpretarla liberalmente a favor de los derechos del trabajador. *Irizarry v. J & J Cons. Prods. Co., Inc.,* 150 DPR 155, 164 (2000).

El Artículo 2 de la Ley Núm. 80, *supra,* define "justa causa" como "aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono." En lo aquí pertinente, dicho artículo expone una lista no taxativa de causas justificadas para el despido que lee como sigue:

(a) Que el empleado incurra en un patrón de conducta impropia o desordenada.

(b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado. 29 LPRA sec. 185b.

No obstante, a pesar de que la Ley Núm. 80 provee una lista de circunstancias que justifican el despido de un empleado o empleada, la precitada ley no pretende ser un código de conducta limitada a una lista de faltas claramente definidas con sus sanciones correspondientes. *Jusino et als. V. Walgreens*, 155 DPR

560, 573 (2001). A estos efectos, el patrono tiene la potestad de adoptar reglamentos internos y establecer normas de conducta en el lugar de trabajo que estime necesarias para conseguir el buen funcionamiento de la empresa. *Íd.* Los empleados estarán sujetos a cumplir con dichos reglamentos y normas, siempre y cuando éstos cumplan con el criterio de razonabilidad. *Íd.* De este modo, para que las violaciones de las normas del empleo constituyan justa causa para el despido, el patrono tiene la obligación de probar la razonabilidad de las normas establecidas, que le suministró copia escrita de éstas al empleado y que el empleado las violó. *Rivera Águila v. K-Mart de P.R.*, 123 DPR 599, 613-614 (1942). En cambio, no se considerará despido por justa causa aquel que se hace por el mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento. *Srio. del Trabajo v. GP Inds., Inc.,* 153 DPR 223, 241 (2001).

En fin, el principio rector que gobierna el despido por justa causa dispuesto en el Artículo 2 de la Ley Núm. 80, *supra*, es aquel que delimita las circunstancias en que éste se produce. Es decir, cuando tiene su origen en alguna razón o motivo vinculado a la ordenada marcha y normal funcionamiento de una empresa y no en el libre arbitrio o capricho del patrono. *Íd.*

Finalmente, el Artículo 11 de la Ley Núm. 80, crea una presunción de que todo despido es injustificado. 29 LPRA sec. 185k. No obstante, la Ley Núm. 4-2017, intitulada *Ley de Transformación y Flexibilidad Laboral*, 29 LPRA sec. 121, *et seq.*, enmendó la Ley Núm. 80, *supra*, y la presunción de que el despido fue injustificado, por lo que, a tenor con la interpretación del Tribunal

Supremo de Puerto Rico, a las controversias que surjan luego de la aprobación de dicha Ley, no se le aplicará la presunción de despido injustificado y el empleado o la empleada despedida tendrá que probar que su despido fue injustificado. *Ortiz Ortiz v. Medtronic Puerto Rico Operations*, 209 DPR 759, 781 (2022).[10]

-D-

Nuestro sistema constitucional protege al ciudadano puertorriqueño contra todo acto de discrimen por razón de su género. Art. II, Sec. 1, Const. ELA. De este modo, nuestro ordenamiento legal ha protegido dicho principio mediante la promulgación de leyes laborales que prohíben toda práctica de discrimen por razón del sexo de una persona. Entre estas, la Ley Núm. 100 de 30 de junio de 1959, según enmendada, mejor conocida como *Ley contra el Discrimen en el Empleo*, 29 LPRA sec. 146, *et seq.*, prohíbe toda acción discriminatoria de un patrono contra su empleado por razón de edad, raza, color, sexo, origen o condición social. *Hernández v. Trans Oceanic Life Ins. Co.,* 151 DPR 754, 773 (2000). En particular, la referida ley protege a los empleados y aspirantes a empleo contra discrímenes de los patronos o de las organizaciones obreras. *Íd.*

Bajo las disposiciones de esta ley, el reclamante debe establecer un caso *prima facie* de discrimen. *López Fantauzzi v. 100% Natural*, 181 DPR 92, 121 (2011). Es decir, que el peso de la prueba corresponde inicialmente al empleado. *Íd.*, pág. 122. De este modo, el Tribunal Supremo de Puerto Rico ha destacado que, cuando un

---

[10] Ley Núm.4-2017 fue anulada por decisión de la Jueza Laura T Swain emitida el 3 de marzo de 2023 en *In re: FOMB v. Pierluisi Urrutia*, 17-BK3283-LTS (Adv. Proc. 22-00063-LTS). No obstante, la Ley Múm. 4-2017 era la legislación vigente al momento de los hechos en controversia.

empleado inste una acción al amparo de la Ley Núm. 100, *supra*, deberá demostrar: (1) que hubo un despido o acto perjudicial; (2) que éste se realizó sin justa causa; y (3) algún hecho base que lo ubique dentro de la modalidad de discrimen bajo la cual reclama." *Íd.*, pág. 123; *Ramos Pérez v. Univisión*, supra, pág. 222.

Así, corresponde al empleado desfilar prueba en torno a ciertos hechos básicos que configuren la modalidad de discrimen imputada, a fin de que el juzgador tenga, en términos generales, una base racional y motivos para inferir que la acción tomada en su contra fue discriminatoria. *Díaz v. Windham Hotel Corp.*, 155 DPR 364, 387-389 (2001).

Una vez el empleado establece el caso *prima facie* de discrimen, el patrono podrá rebatirla probando que la existencia del discrimen es menos probable que su inexistencia. *Odriozola v. S. Cosmetic Dist. Corp.*, 116 DPR 485, 502 (1985). Ello podrá hacerlo de tres maneras: (1) derrotando el hecho básico (la ausencia de justa causa); (2) destruir el hecho presumido (que el despido fue por causa de motivos discriminatorios); o (3) destruir el hecho básico y el presumido a la vez. *López Fantauzzi v. 100% Natural*, supra, pág. 124. Dicho de otro modo, debe probar que no se tomó la acción adversa o que existió justa causa para la acción tomada; es decir, demostrar que la acción no respondió a un ánimo discriminatorio.

De rebatirse la presunción de discrimen, el empleado nuevamente tendrá oportunidad de demostrar la existencia del discrimen, aunque sin el beneficio de la presunción inicial. *SLG Hernández-Beltrán v. TOLIC*, 151

DPR 754, 775 (2000). Es decir, que el empleado tendrá que probar hechos específicos de los cuales surja el discrimen. *Íd*. Sólo si queda probado que el patrono incurrió en conducta discriminatoria contra el empleado, tendrá que indemnizarlo por los daños que ello le hubiera ocasionado. *Mestres Dosal v. Dosal Escandón*, 173 DPR 62, 69 (2008); 29 LPRA sec. 146.

**III.**

En el caso ante nos, la apelante impugna la *Sentencia* emitida el 4 de diciembre de 2024, y notificada el 6 de diciembre de 2024. En vista de ello, en su primer señalamiento de error planteó que el foro primario incidió al desestimar la *Querella* al amparo de la Regla 39.2 (C) de Procedimiento Civil, supra. Asimismo, en su segundo señalamiento de error argumentó que el foro primario incurrió en error, perjuicio, parcialidad y error manifiesto al determinar que su despido fue con justa causa. En cuanto al tercer señalamiento de error, adujo que el foro primario incidió al determinar que el patrono tenía el peso de la prueba para establecer que su despido fue justificado. Ello contrario a lo resuelto en *Díaz v. Wyndham*, 155 DPR 364 (2001). Finalmente, en su cuarto señalamiento de error, arguyó que el foro primario erró al determinar que no presentó prueba suficiente sobre discrimen por razón de sexo. Luego de examinar la totalidad del expediente, la transcripción de la prueba oral y la prueba documental nos encontramos en posición de resolver.

Surge del expediente ante nuestra consideración que, Grupo Epem tenía una *Política de Desempeño, Medición y Plan de Incentivos Para Representantes de Ventas de*

*Autos* a los fines de establecer objetivos, discutir progreso, identificar áreas de oportunidad y acordar planes de mejoramiento y desarrollo. Además, dicha política disponía que cada representante de ventas era responsable de cumplir con todos los procesos y objetivos establecidos en dicho departamento. Conforme a lo anterior, dicha política estableció indicadores de medición que podían ser adaptables a nuevas circunstancias y exigencias según las necesidades de la operación. Particularmente, la política de desempeño permitía medir el rendimiento mensual y logro de resultados, la calidad de trabajo y/o gestión realizada en el proceso de ventas en general.

La política de desempeño y medición indicaba que todo representante de ventas debía cumplir con una cuota de ventas mensual de diez (10) unidades mínimo entre vehículos nuevos y usados desde el 1 de julio de cada año hasta el 30 de junio del próximo año. A su vez, establecía que, durante el año que comprendía la medición mensual, si el representante de ventas no cumplía con la meta de ventas mensual se tomarían las siguientes medidas de disciplinarias progresivas:

- Amonestación verbal documentada – 1'er (primer) mes (durante cualquier periodo dentro del año fiscal) sin cumplir con la cuota mínima requerida de ventas. En reunión con representante de ventas se documentará el incumplimiento de cuota mensual y se le exhortará a cumplir con la misma.

- Amonestación escrita (primera advertencia escrita) – 2'ndo (segundo) mes (durante cualquier periodo dentro del años fiscal) sin cumplir con la cuota mínima requerida de ventas. En reunión con representante de ventas se documentará la repetida del incumplimiento de cuota mensual y se le exhortará nuevamente a cumplir con la misma.

- Suspensión (segunda advertencia escrita) – 3'er (tercer) mes (durante cualquier periodo dentro del año fiscal) sin cumplir con la cuota mínima requerida de ventas. En reunió con representante de ventas se documentará la repetida incidencia

del incumplimiento de cuota mensual y se le notificará por escrito que de repetir el incumplimiento de cuota mensual se realizará una terminación de empleo (despido).

- Terminación de empleo – 4'to (cuarto) mes (durante cualquier periodo del año fiscal) sin cumplir con la cuota mínima requerida de ventas.[11]

Cabe precisar, que la apelante firmó dicho documento. Posteriormente, la política de desempeño y medición fue enmendada con el propósito de modificar el periodo de medición de ventas mensual desde el 1 de enero de hasta el 31 de diciembre de cada año.[12]

Según el derecho el derecho previamente expuesto, el Artículo 2 de la Ley Núm. 80, *supra,* define "justa causa" como "aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono." Al respecto, el Art. 2(b) de la legislación en cuestión estatuye, entre otras cosas, que se considera justa causa para el despido que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono. Por su parte, el Art. 2(c) considera justa causa para el despido la violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya

---

[11] *Política de Desempeño, Medición y Plan de Incentivos Para Representantes de Ventas de Autos,* anejo XXV, págs. 1617-1626 del apéndice del recurso.

[12] *Política de Desempeño, Medición y Plan de Incentivos Para Representantes de Ventas de Autos,* anejo XXV, págs. 1672 del apéndice del recurso.

suministrado oportunamente al empleado. 29 LPRA sec. 185b.

El expediente ante nuestra consideración refleja que, la señora Morales fue amonestada verbalmente el 21 de febrero de 2022, toda vez que en el mes diciembre de 2021, únicamente vendió cinco (5) vehículos. De igual forma, se le informó que la cuota de venta mensual para el mes de diciembre de 2021 era de diez (10) vehículos por lo que había incumplido con esta. Por otra parte, se le orientó que podía solicitar algún tipo de mentoría y que utilizara las herramientas necesarias para cumplir su cuota. Por último, se le notificó que, de continuar con dicho incumplimiento, se estarían tomando sanciones más severas conforme a la política de desempeño y medición. La amonestación fue firmada por la señora Morales el 22 de febrero de 2022.

Posteriormente, el 3 de marzo de 2022, la apelante recibió una amonestación escrita por incumplimiento de la cuota mensual. Específicamente, el documento explicaba que la señora Morales vendió siete (7) vehículos para el mes de febrero de 2022. Adicionalmente, se le notificó que la cuota de venta mensual para el mes de febrero de 2022 era de diez (10) vehículos por lo que había incumplido con esta. Finalmente, se le informó que, de continuar con dicho incumplimiento, estaría expuesta a suspensión de empleo y sueldo por cinco (5) días conforme a la política de desempeño y medición. La amonestación fue firmada por la señora Morales el 7 de marzo de 2022.

Así las cosas, el 25 de mayo de 2022, la señora Morales fue amonestada por asistencia y puntualidad. Mediante dicha misiva, se les exhortó a todos los

empleados que tenían que cumplir con su horario de trabajo y ponchar a las indicadas. La apelante firmó dicho documento el 28 de mayo de 2022. Luego, el 10 de junio de 2022, la señora Morales fue amonestada por escrito, puesto que incumplió con la cuota mensual de ventas. En esencia, se le notificó que, para el mes de mayo de 2002, vendió ocho (8) vehículos y, que la cuota de venta mensual de mayo fue ajustada a nueve (9) vehículos por problemas de inventario. A su vez, Grupo Epem reiteró las consecuencias de incumplir con la política de desempeño y medición.

Más adelante, el 13 de septiembre de 2022, la apelante recibió una tercera amonestación respecto al incumplimiento de cuota mensual de ventas. Dicho documento, indicaba que, para el mes de agosto de 2022, la señora Morales únicamente vendió tres (3) vehículos. No obstante, la cuota de venta mensual había sido ajustada a siete (7) vehículos para agosto de 2022. Cónsono con lo anterior, se le informó que sería suspendida de empleo y sueldo por cinco (5) días, comenzando el 13 de septiembre de 2022 y culminando el 20 de septiembre de 2022. El documento fue firmado por la señora Morales el 13 de septiembre de 2022. Finalmente, el 5 de noviembre de 2022, la apelante fue despedida de su puesto como representante de ventas en el dealer Toyota de Bayamón.

Nótese que, dichas amonestaciones fueron estipuladas por las partes en el *Informe de Conferencia con Antelación a Juicio* por lo que la señora Morales aceptó el incumplimiento en los meses de febrero, mayo, agosto y septiembre de 2022. Adicionalmente, Grupo Epem ajustó la cuota mensual de venta de vehículos por

problemas en el inventario. Sin embargo, la apelante no logró cumplir con dicha cuota. Asimismo, es meritorio señalar que Grupo Epem apercibió a la señora Morales sobre las herramientas adicionales que tenía disponibles para alcanzar su cuota de ventas, así como apoyo de su gerente. No surge del expediente ante nuestra consideración, ni de la transcripción de la prueba oral, que esta utilizara dichas herramientas para cumplir con su cuota mensual.

De otra parte, resaltamos que dichas amonestaciones se realizaron dentro del año fiscal 2022 conforme lo exige la enmienda a la política de desempeño y medición. Entiéndase, la señora Morales recibió dichas amonestaciones por incumplimiento con las cuotas de los meses de febrero de 2022, mayo 2022, agosto 2022. Luego, fue despedida en noviembre de 2022. Por tanto, el incumplimiento con las cuotas de venta mensual durante el periodo de medición desde el 1 de enero de 2022 hasta el 31 de diciembre de 2022 conllevó a su despido.

De la transcripción de la prueba oral surge que la apelante testificó que no logró cumplir con sus cuotas, puesto que el dealer tenía problemas de inventario, refiriéndose a falta de marcas, modelos o colores vehículos. No obstante, expresó al Tribunal que el Grupo Epem consistía en veinte (20) a veinticinco (25) representante de ventas y, que estos cumplían con su cuota de ventas. Resaltamos que, Grupo Epem tenía conocimiento de su problema en inventario por lo que bajó cuota de venta mensual a siete (7) u ocho (8) vehículos. A su vez, para justificar su causa de acción por despido injustificado, la señora Morales señaló que existían otros compañeros que incumplían con la cuota de

venta mensual, pero que a estos no los amonestaron ni despidieron. Particularmente, la apelante mencionó algunos nombres de compañeros que presuntamente incumplían con la cuota de ventas. No obstante, admitió que dichos compañeros nunca le comunicaron su incumplimiento con las ventas. Tampoco presentó evidencia sobre el incumplimiento de estos con las cuotas, amonestaciones o cartas de despido.

Por otro lado, la señora Morales presentó como testigo al Sr. José Morales, quien era representante de ventas y fue despedido de Grupo Epem. Como parte de su testimonio este presentó dos (2) fotos que demostraban el inventario de uno (1) de los cuatro (4) lotes que tenía Grupo Epem en Bayamón. Enfatizamos que, el señor Morales admitió que esa foto era de un solo lote y que dichas fotos fueron tomadas únicamente en el mes de octubre. Por tanto, el señor Morales desconocía el inventario total de grupo Epem para el mes de octubre y los meses en que presuntamente había problemas con el inventario. A su vez, el señor Morales reconoció que en ese mes los representantes de ventas recibieron bonificaciones cuando un grupo de vendedores logró vender ciento un (101) vehículos. Entiéndase, dicha prueba no era representativa del inventario total de Toyota en Bayamón.

En virtud de lo anterior, colegimos que el foro primario no erró al determinar que la apelante no desfiló prueba suficiente para lograr sustentar sus alegaciones por despido injustificado. Entiéndase, la señora Morales no logró demostrar que Grupo Epem aplicó la política de desempeño y medición de manera arbitraria o discriminatoria. Asimismo, es preciso destacar que las

partes estipularon las amonestaciones por incumplimiento en la cuota de ventas. Por tanto, concluimos que en las distintas ocasiones en que la apelante incumplió con las cuotas de ventas no fue porque Grupo Empen tenía un problema de inventario. Es decir, es irrazonable determinar que dos (2) fotos tomadas en el mes de octubre de uno (1) lote de los cuatro (4) lotes que tenía Toyota de Bayamón era prueba suficiente para demostrar la falta de inventario. Por último, resolvemos que aun tomando en consideración los días de vacaciones y enfermedad y, reduciendo dichos días a la cuota mensual requerida a la señora Morales, esta no logró cumplir con dichas cuotas.

En cuanto al proceso probatorio en reclamaciones por despido discriminatorio al amparo de la Ley Núm. 100 y la Ley Núm. 80, conjuntamente, el caso *Díaz v. Wyndham, 155 DPR 364* (2001), resolvió que el empleado demandante, que reclama la protección de ambos estatutos, tiene el deber de alegar en su demanda la ausencia de justa causa y luego, durante el primer turno de prueba, probar ciertos elementos básicos de su reclamación por discrimen para que quede activada la presunción dispuesta por ley. *Díaz v. Wyndham, 155 DPR 364, 388 (2001).* Posteriormente, la Ley Núm. 4-2017, *supra*, enmendó la Ley Núm. 80, *supra*, y la presunción del despido injustificado, por lo que, a tenor con la interpretación del Tribunal Supremo de Puerto Rico, a las controversias que surjan luego de la aprobación de dicha Ley, no se le aplicará la presunción de despido injustificado y el empleado o la empleada despedida tendrá que probar que su despido fue injustificado. *Ortiz Ortiz v. Medtronic Puerto Rico Operations*, 209 DPR 759, 781 (2022). Nótese que, al momento de la

contratación y despido de la señora Morales, la ley vigente era la Ley Núm. 4-2017, por lo que no erró el foro primario al determinar que le correspondía a la apelante cumplir con el peso de la prueba y demostrar que su despido fue injustificado.

Ahora bien, respecto a la causa de acción por Ley Núm. 100-1959, *supra*, la señora Morales argumentó que el señor Jonathan Meléndez, quien era supervisor de uno de los grupos de representantes de ventas, expresaba que no le gustaba trabajar con mujeres. Además, planteó que en el grupo de representante de ventas estaba compuesto de veinticinco (25) empleados, entre estos tres (3) a cuatro (4) mujeres y, el restante eran hombres. Por último, señaló que el 5 de noviembre de 2022, despidieron a mujeres únicamente y, que había cuatro (4) empleados hombres que no cumplieron con las cuotas mensuales de ventas. Sin embargo, estos no fueron amonestados o despedidos.

En lo pertinente a la controversia ante nuestra consideración, la causa de acción por Ley Núm. 100-1959, *supra*, prohíbe toda acción discriminatoria de un patrono contra su empleado por razón de sexo. Bajo las disposiciones de esta ley, el reclamante debe establecer un caso *prima facie* de discrimen. *López Fantauzzi v. 100% Natural*, *supra*. De este modo, el Tribunal Supremo de Puerto Rico ha destacado que, cuando un empleado inste una acción al amparo de la Ley Núm. 100, *supra*, deberá demostrar: (1) que hubo un despido o acto perjudicial; (2) que éste se realizó sin justa causa; y (3) algún hecho base que lo ubique dentro de la modalidad de discrimen bajo la cual reclama." *Ramos Pérez v. Univisión*, supra.

Surge del expediente y de la transcripción de la prueba oral, el supervisor de la señora Morales era el Sr. Peter Ramos y no Jonathan Meléndez. La apelante sostuvo que nunca se sintió discriminada por el señor Ramos. De igual forma, la apelante admitió que nunca entabló una conversación con el señor Jonathan Meléndez y, que únicamente se saludaban en la mañana o en la tarde. Aclaró que, días antes de su despido, el señor Meléndez le indicó que podía dedicarse a vender sancochos, porque iba a ganar más dinero que como representante de ventas.

Nótese que, durante el tiempo en que la apelante laboró para el Grupo Epem nunca estuvo bajo la supervisión del señor Jonathan Meléndez, este no fue quien la contrató ni la despidió. No obstante, esta no presentó alegaciones sobre discrimen por razón de sexo contra su supervisor, el señor Ramos, algún compañero o contra la Sra. Grisselle García, quien la despidió. Adicionalmente, entendemos que el hecho de que los representantes de ventas eran en su mayoría hombres, de por sí, no nos parece una alegación suficiente de discrimen por razón de sexo. Finalmente, la señora Morales admitió que había escuchado que varios de sus compañeros incumplían con las cuotas de ventas mensual. No obstante, no presentó evidencia o logró demostrar que tenía conocimiento de que dichos compañeros nunca fueron amonestados o despedidos. Admitió que, el 5 de noviembre de 2020, despidieron a otra de sus compañeras y a tres (3) compañeros. Ello por incumplir con las cuotas de ventas.

Por todo lo anterior, es forzoso concluir que la señora Morales no nos puso en posición de concluir que

fue víctima de discrimen por razón de sexo. Entiéndase, esta no presentó ninguna prueba específica que nos permitiera concluir que fue discriminada por razón de sexo. Así pues, determinamos que el despido de la apelante no fue discriminatorio. Ante la ausencia de prueba con relación a las causas de acción por despido injustificado y discrimen por razón de sexo, resolvemos que no incidió el foro primario en su aplicación de la Regla 39.2 (c), *supra*. Como bien señala la parte apelada, el foro primario actuó dentro de sus facultades adjudicativas ante la prueba oral y documental desfilada en el juicio en su fondo. Por ello, entendemos que el foro primario no incurrió en error, perjuicio, parcialidad o error manifiesto al determinar que su despido fue con justa causa, no fue discriminatorio y ordenar la desestimación de la *Querella* al amparo de la Regla 39.2 (c). *supra*. Dicho proceder, fue razonable. En virtud de lo anterior, colegimos que los errores señalados no se cometieron.

**IV.**

Por los fundamentos antes expuestos, **CONFIRMAMOS** la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones